Good morning. Good morning, Your Honors. May it please the Court, Ina Lipkin on behalf of the Petitioner. There's really two issues that are before this Court. One, was it proper for the immigration judge to base an incredibility finding on his speculation that an affidavit from Petitioner's mother was somehow fraudulent or not prepared in India, as he purported it was? And second, whether the Petitioner's omission of repeated police visits to his home after his departure from India was a sufficient basis to form an incredibility finding. So you have the mentally sick word or whatever, and then you also have that he apparently, that they had come looking for him after. In my view, the mentally sick is the weaker of the two. It's clearly relevant to prove that you're going to, that you face future persecution, that they kept looking for him after he left. So, and the I.J. here seemed to ask a million times, or maybe I'm engaging in hyperbole, but a lot of times, are you sure you're telling me everything? Is this everything that you want to say about it? So what's your best – this clearly was relevant, but what's your best argument that it's not a basis for adverse credibility? First, I'd like to point out that it's not as if the Petitioner never made any mention in any of his documentation prior to the merits hearing that the police were visiting him. Clearly, in both his Uncle Santa Sings affidavit on page 499 and his Mother Darshan Coors affidavit at page 498, the second to the last line are very similar, and they both state, and the police are continuing to harass us. So clearly, there was some indicia in this record that the police did continue to harass him. True, the Petitioner should have spoken up and asserted prior to the hearing when the judge had asked him to that, oh, and by the way, on these four dates, the police came to visit him. Well, was he by himself or did he have a lawyer? He had a lawyer, Your Honor. Well, I guess from the standpoint that I understand something, if you as a lawyer – were you his lawyer? At the very, very end, Your Honor. Okay. Well, if you as a lawyer, say, for the first time decide to raise evidence, say something in your reply brief or for the first time on appeal, that, oh, we have this evidence that the police kept coming and looking for him, and that's evidence of future persecution. I'm pretty sure that you get the book slammed at you as a lawyer that's saying, you know, you're clueless if you don't understand that that's evidence of that you're going to be persecuted. Do you think it's different for a lay person, or should the lawyer sitting next to him say, hey, you know, what about this? What about that? I think certainly the lawyer has a responsibility to make sure that the client, in this case the Petitioner, does reveal all the aspects of his claim that could be relevant. On the other hand, the Petitioner did make some mention that he fears the police continuing to harass him, and he did submit those two affidavits prior to the merits hearing. Given that, even under the real ID standards which govern this case, the Petitioner did submit those two affidavits prior to the merits hearing. I don't feel that this sort of omission is the kind that would somehow undermine his credibility, because if you look at his testimony regarding past persecution that while he was in India, the police had arrested him three times, beaten and tortured him and so forth. That was credibly put forth before the court, and that was properly corroborated by an abundance of documentary evidence. But the problem is when you get an adverse credibility call, it sort of wipes everything out for you. That's right. But in this case, it seems that the immigration judge engaged in improper cherry picking, and I want to relate that back to the affidavits and then go back to the issue of omission, and I'll tell you why. So the two affidavits from the uncle and the mother are both very similar, and if you look closely, they seem to be notarized by the same notary, identical stamp. The handwriting of this notary appears to be similar. They're both dated January 4, 2006. So one could, I think, reasonably conclude they were prepared, at least on the same day by the same person. Perhaps the two went in together to get them done. But the IJ, he makes no conclusions regarding Santa Sing's affidavit. Now, if he makes no conclusions about that affidavit, we have to assume that he found that that was a credible affidavit, then why should he then engage in negative inference or speculation that for some reason the mother's affidavit is not credible? And it was because he latched on to this basis for his credibility finding. He then incorporated the omission to sort of buttress that finding, which was improper in the first place. This Court has held that even in cases where a person omits a rape at several stages in the proceedings, and only at the meritory, even when represented with counsel, suddenly starts to testify about that, that is not in all circumstances a proper basis for an incredibility finding. Why, then, should several police visits, which the Petitioner was not present for, it's hearsay for him, his mother informed him about it, why should that be a sole reason to find him incredible? When, if we look at the issue of the affidavits, that wasn't a justifiable basis. Kennedy, counsel, are you conceding they were prepared, the affidavits were prepared by the same person, which I think is the conclusion of the IJ? I would concede that. I would. Because I think when you look at it, it's got the same notary stamp and the same date. You left out the font is the same. He made a big deal of that as well. Right. But not necessarily with the Petitioner's declaration. We're just talking about the two affidavits he supported. May I save a little time for it? Sure. I think that would be a good idea. Good morning. Good morning. May it please the Court, Todd Cochran on behalf of the Attorney General. The question is not a petition for review because despite being offered numerous opportunities, Your Honor, recognized by the immigration judge for the Petitioner to update his asylum application prior to testifying on two separate occasions, the ones when he filed the application. Well, I can sort of see. This is a little bit of a thin read. This isn't the strongest, you know, I mean, we can't compare apples and oranges in one case to another. But this is thinner than some in my view. And I could see as a layperson where if they're saying, well, do you want to add anything, that a layperson isn't thinking so much about like the elements of the crime or the elements of the burden of proof in terms of, you know, past, future, presumptions, you know, all of that. It's like what happened to you there that makes you afraid to go back. And it isn't as obvious to me in terms of, I find it hard to believe that if someone leaves a rape out, unless they can show that there was some reason that they, that the person that looked, the I.J. believed that they just were embarrassed to report it or there were social conventions that prevented it or any number of things. But here, you know, isn't it just sort of, I mean, it is that, or is it just that the case is so thin that it's hard to understand what's going on? And to the extent that you're saying do you win by the burden of proof because of compelling here, I mean. Well, I would certainly submit that we do. That was correct. But the burden of proof. But it's a little thin. Your Honor, as you recognized earlier, the immigration judge asked four or five or six questions on two separate occasions. Is this everything he asked? Well, a million questions almost. I mean, I'd never, I haven't seen a record where they asked it that much. Are you sure? It almost looks like I'm waiting, I'm looking for the gotcha. Well, the immigration judge said he wanted to make sure he had the entire claim before him, before he testified. So he asked him that when he filed the application. And then a year later, right before he testified, he then again asked him a series of questions regarding is this everything that happened to you in the past? Is this everything that goes to your fear to returning home? Is your application complete? Is this everything that bolsters your claim? And then the petitioner said yes that it was and proceeded to testify about four alleged times the police came to his house looking for him. The most recent of which occurred three months prior to his testifying before the immigration judge that day. Moreover, it was about a pivotal event. It wasn't some, not that it matters. Was it in the evidence, though? Was it in the evidence that the police had been there four times? No, it was not, Your Honor. He testified that the, I believe he testified that the police came to his house in April of 2005 prior to him departing India and were looking for him then. And then he departed in May of 2005, entered the United States shortly thereafter. And then he said after that point in time they came to his house a week after he departed India two times in 2006, or 2006, twice in 2007, most recently three months before he testified before the immigration judge. And. Well, how did it get in the record? It was in the record somewhere, right? It was not because he didn't include it in his application. He simply testified to it at his merits hearing in March of 2008. Well, so it's in the record in the merits hearing. Yes, Your Honor. So is it that he didn't really correctly summarize what all the evidence was of his? Well, yes. He didn't put his full claim forth prior to testifying. The immigration judge asked him numerous times to do. Moreover, it wasn't corroborated by anything. The only affidavit corroborating these alleged visits was his mother's affidavit, which the immigration judge also relied upon for this sick with a mental torture language. And the immigration judge questioned the petitioner regarding why that similar language appeared in there, and questioned about whether he was prepared by the same person. And the petitioner offered no reasonable explanation. They simply said, I did mine, she did hers, I don't know why. And then in the opening brief, the petitioner offers. Let's see if we only had that hypothetically. Is that enough to support this adverse credibility? Would that be enough? The affidavit. The mental sickness. If that was it. I would submit that it is. I agree with Your Honor that it's probably the weaker of the two positions the immigration judge relied upon, but I think that it certainly draws into question the petitioner's credibility overall, that, you know, he wasn't able to prove that the affidavits weren't prepared by different people, that sort of similar and unusual language contained in there was a red flag to the immigration judge. So I think that it calls into question his credibility overall. Yeah. So you're relying, you say the stronger ground or matter that pointed out is the omission of the police visits. Is that your position? Correct, Your Honor. If I'm forced to choose, I would say that one, yes. Yeah. And that's basically, you've got that omission and you have the similar language and that's it, and you have the BIA dropping a footnote indicating that it might not have reached, which is also kind of unusual, that it might not have reached the same conclusion, that it was stuck with the standard of review. So you've got to admit that this isn't the strongest case in the world. Well, if I, you know, I would like to not admit that, Your Honor, but certainly I agree with you. But it's on the BIA saying. I agree with you. The Board's footnote is a little bit unusual. But as the Board recognized, it was held to the clear air standard of review, and the Board found that there was no clear in the immigration judge's decision. And then this Court here, as you know, has held a substantial evidence standard in the post-Real ID Act case as well. So the totality of the circumstances go to the substantial evidence here. I will point out that there are cases from this Court where omission of key events from a person's asylum application were found to be a basis for the average credibility determination. We have cases where they weren't. Yes. And there are so many cases where they weren't. There's always two sides of the coin. A lot to pick from. Mr. Cockburn. The government relies upon Ken V. Holder, 595, F. 3rd, 1050, as well as Alvaro Santos, 332, F. 3rd, 1245. Judge Pratt has a question. Mr. Cockburn, obviously I've never seen an administrative record from an immigration hearing before this sitting. Is it normal that the I.J. begins the proceedings in the manner that this I.J. did in asking, is your record complete here? Does that normally happen, or is it just? I think some immigration judges will ask the question, is everything complete, you know, maybe one time. The immigration judge himself pointed out here, I feel that, unlike most I.J.s, I'm going to ask you the series of questions to make sure, to make really, really sure we have your entire claim before us in your application. So your answer to that? I'm sorry. Go ahead. That's why he revisited that issue more than a year later prior to the testimony today. So your answer is it's not unusual? I think it's unusual for the immigration judge to ask this series of questions. And as he recognized in his decision, he wanted to make clear that everything supporting the Petitioner's claim was presented prior to testifying. Okay. I hope that answers your question, Your Honor. You have. We don't have additional questions. And I would submit that substantial evidence supports the Board's decision, and you deny the position for review. Thank you for your argument. Thank you. Your Honors, I just want to point out on the brief, page 31, the series of cases we mentioned where this Court has found that certain omissions are not a proper basis upon which to rest an incredibility finding. Is there anything else? I don't think so. Thank you so much. Thank you both for your argument. This matter will stand submitted.
judges: Pratt, Schroeder, Callahan